IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

TADESSE MENGISTU     PLAINTIFF
V.     CIVIL ACTION NO.: 4:16-cv-65-SA-JMV
MISSISSIPPI VALLEY STATE UNIVERSITY,
DR. JONGCHAI KIM,
AND MVSU EMPLOYEES A-D     DEFENDANTS

MEMORANDUM OPINION

This matter is presently before the Court on Defendant's Motion for Summary Judgment. Plaintiff has responded, and Defendants replied.

*Facts and Procedural Background*

Dr. Mengistu began employment with Mississippi Valley State University (MVSU) as an associate professor of Economics on August 15, 2006. His annual salary was $68,000 until 2007, when his salary was increased to $70,380.00.

In 2013, following the retirement of a tenured faculty member, MVSU sought to hire a replacement and began advertising an opening for associate professor. The search committee, which consisted of Dr. Mengistu and three other faculty members, reviewed applications and interviewed potential candidates. Dr. Joeng Beom Lee was selected as the most qualified candidate by three of the four committee members. Only Dr. Mengistu ranked Dr. Lee as the second most qualified candidate. In any event, Dr. Lee was recommended to the Department head, Dr. Jongchai Kim, who interviewed Dr. Lee, and then recommended him for hire to the Vice President of Academic Affairs. The Vice President reviewed Dr. Lee's application and recommended Dr. Lee to the President for hire at an annual salary of $75,000. The acting President hired Dr. Lee on October 1, 2013, and an offer of salary was extended to Dr. Mengistu for $75,000.

MVSU does not have a wage schedule, but instead uses a salary range for each open position based on the availability of budgeted funds on a salary line and/or the availability of budgeted funds within the Department. According to MVSU, the University also evaluates years of service, experience, education and accomplishments in previous positions before a salary is negotiated or extended.

Since Dr. Lee's hire, Dr. Mengistu has received, accepted and signed four (4) annual contracts that outline his salary of $70,380. However, he alleges that MVSU was discriminatory in its hiring of Dr. Lee, who is from South Korea, because, even though Dr. Lee is merely an Assistant Professor, his wages exceed those of other Assistant Professors and those of Dr. Mengistu's, who is an Associate Professor.[1] Plaintiff, Dr. Mengistu, was born in Ethiopia and is presently a United States citizen. Dr. Mengistu believes that Dr. Lee received an increased salary because he and Dr. Kim are both of South Korean descent.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate

---

[1] MVSU maintained a Faculty Ranking system featuring (from highest to lowest): (1) Professor, (2) Associate Professor, (3) Assistant Professor, and (4) Instructor.

the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis*

Plaintiff alleges that he is the victim of discrimination under Title VII and Section 1981 because he has a higher rank than Dr. Lee, yet Dr. Lee has a higher salary than he does. Additionally, Plaintiff makes claims for negligent hiring, supervision and retention, hostile work environment, and intentional and negligent infliction of emotional distress.

A. *Discrimination Under Title VII*

To succeed on a claim for racial discrimination under Title VII or Section 1981,[2] a plaintiff may show a *prima facie* case either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell*

---

[2] The elements of the claims under Title VII and Section 1981 are identical. We therefore evaluate both claims using the same analysis. *See Reilly v. TXU Corp.*, 271 F. App'x 375, 379 (5th Cir. 2008) (citing *Pratt v. City of Houston*, 247 F.3d 601, 605 n.1 (5th Cir. 2001) (internal citations omitted)).

3

*Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). If a plaintiff creates a presumption of discrimination by establishing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

If the employer sustains its burden, the *prima facie* case is dissolved, and a plaintiff asserting discrimination must establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Plaintiff intends to establish a *prima facie* case of discrimination with circumstantial evidence. Therefore, plaintiff must show that he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for his position, and (4) was replaced by someone outside of the protected class or that similarly situated employees of a different class were treated more favorably. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Defendants first take issue with the second factor, alleging that Plaintiff has not suffered an adverse employment action because he was offered his salary in 2007, years before Dr. Lee was hired.

"To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility. *See Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) (citing *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)). Therefore, Defendants may not refute the *prima facie* case by explaining *why* Plaintiff's salary was lower than comparators. The burden of establishing a *prima facie* case of disparate treatment is not onerous. *Burdine*, 450 U.S. at 253, 101 S. Ct. 1089. Plaintiff has successfully established that he suffered an adverse employment decision under the *prima facie* burden. *Id*.

Furthermore, Plaintiff has attempted to establish that he was treated less favorably than similarly situated employees were. "An individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are "nearly identical" to those of a better-paid employee who is not a member of the protected class." *Taylor*, 554 F.3d at 523 (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). In support of his *prima facie* case, Plaintiff argues that both Plaintiff and Dr. Lee taught as professors at MVSU, and have substantially similar qualifications. Both Dr. Lee and Plaintiff possess a Ph.D., and each professor has at least some experience as instructors. Plaintiff argues that though their experiences were different, Plaintiff is more worthy of higher pay because his experience is at MVSU, where he has been a professor for seven years.

However, Dr. Lee was hired years after Plaintiff, and he had substantial experience as the External Managerial Advisor with Financial Engineering & Consulting of Korea. "Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff

generally will not be deemed similarly situated." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Furthermore, if the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis. *Id.* at 260 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)). Plaintiff has not articulated facts tending to show that he was similarly situated to Dr. Lee, because they were hired years apart, and their experiences were different upon hire. Furthermore the Court is unaware of the specific negotiations which took place between Dr. Lee and MVSU, and may not compare Dr. Lee's strengths as a negotiator with those of Plaintiff. Therefore Plaintiff has not met his *prima facie* burden.

Even if Plaintiff had met his burden of production regarding the *prima facie* case, he cannot refute Defendants' legitimate, nondiscriminatory reasons for offering Dr. Lee $4,620 more than Plaintiff's salary. Defendants reason that Dr. Lee's experience, the timing, and the availability of budgeted funds all contributed to Dr. Lee's offer. According to Defendants, Dr. Lee is a highly qualified Assistant Professor of Business who obtained his Ph. D. from the University of Iowa. His extensive private career moved Defendants to consider him as the most qualified candidate of all the applicants, and therefore, the maximum budgeted amount was negotiated by and extended to Dr. Lee. Furthermore, Dr. Bland, the Vice President of Academic Affairs, testified that faculty hired years a part will by default receive a higher salary. Defendants argue that the availability of budgeted funds allowed them to extend a $75,000 offer to Dr. Lee in 2013, whereas it would not have accommodated this amount before.

Accordingly, at this stage, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [becomes] discrimination *vel non.*" *Reeves*,

6

530 U.S. at 142–43, 120 S. Ct. 2097 (internal quotation marks and citation omitted); *see also Buisson v. Board of Sup'rs of Louisiana Community and Technical College System*, 592 F. App'x 237, 243 (5th Cir. 2014) ("[I]f the employer articulates a legitimate reason for the adverse employment action, 'the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose'"). Plaintiff disputes the employer's legitimate non-discriminatory reason, but fails to offer competent rebuttal evidence. *See Ross v. Univ. of Texas at San Antonio*, 139 F.3d 521, 526 (5th Cir. 1998). For example, Plaintiff argues that, as a professor, he is more experienced than Dr. Lee. Furthermore, Plaintiff argues that the timing of the offered salaries should not create such a discrepancy in pay, because it is not indicative of the hierarchical structure for professors at MVSU. Plaintiff argues that the lack of availability of funds does not justify paying Assistant Professors more than Associate Professors. Plaintiff cites to a supplementation of funding for salaries at MVSU, and questions why MVSU did not simply revise its budget to alleviate the existing salary inequities.

Plaintiff's proffered evidence does not create a genuine issue of material fact that MVSU's reasons are pretextual or unworthy of credence. First, Defendants point out that even though Dr. Kim and Dr. Lee share the same protected class, Dr. Kim does not have the authority to actually make a new hire. He merely recommends candidates who are then reviewed and evaluated by two other administrators before being hired. Deposition testimony and answers to interrogatories confirmed this. Second, Plaintiff was on the hiring committee who recommended Dr. Lee, and Dr. Kim merely furthered that recommendation up the chain of command, which required multiple stages of approval before the salary was offered and extended. Finally, Defendants have directed the Court to Dr. Chowdhury. Dr. Chowdhury, like Dr. Lee, is of Asian descent.

However, Dr. Chowdhury is paid $2,000 less than Plaintiff each year, suggesting a lack of favoritism towards Dr. Lee's class. Dr. Chowdhury is a full tenured professor at MVSU, but because he has worked at MVSU since 1993, his salary negotiation has simply evolved differently than Plaintiff's salary, or anyone else's. In sum, Plaintiff has failed to put forward evidence which would show that the discrepancies in pay are rooted in discrimination, but has merely argued that they are frustrating and misguided.

Plaintiff has failed to refer the Court to any particularized evidence to support his subjective view of the facts. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (plaintiff's generalized statements about relative qualifications or the treatment of similarly situated employees is insufficient to support an inference of discrimination). Though Plaintiff disagrees with MVSU's ability to allocate salaries fairly, he has not met his burden of showing that it does so because of national origin, or even that national origin was a motivating factor. Therefore, Plaintiff's claim for discrimination under Title VII and Section 1981 must be dismissed.

 *B. Negligent Hiring, Supervision, and Retention*

Plaintiff attempts to build a case of negligent hiring, supervision, and retention based on his claims of discrimination. Plaintiff argues that Dr. Kim engaged in discriminatory conduct that harmed plaintiff when he hired Dr. Lee. Upon his hiring, Dr. Lee was unable to begin work immediately because of immigration issues. Dr. Kim, who served as Acting Chair of the Business Administration department, made arrangements to hold the position for Dr. Lee for approximately six months after being selected. Meanwhile, Plaintiff taught an overload of classes. When Plaintiff reported the incident to the MVSU Administration, this problem was alleviated. Next, Plaintiff alleges that Dr. Kim improperly denied his request for tenure, and that

Dr. Kim threatened to terminate Plaintiff because he purportedly did not meet a deadline for promotion.

In Mississippi, "an employer will be liable for negligent hiring or retention of his employee when an employee injures a third party if the employer knew or should have known of the employee's incompetence or unfitness." *Doe v. Pontotoc County Sch. Dist.*, 957 So. 2d 410, 416–17 (Miss. Ct. App. 2007) (citations omitted). "Relatedly, if an employer exercises due care in the hiring of its employees, that employer will not be liable for the injuries of a third party unless that party can prove the employer knew or should have known of the incompetence and unfitness of the employee." *Id.* at 417 (citing *Jones v. Toy*, 476 So.2d 30, 31 (Miss. 1985)).

The majority of the harm that Plaintiff has alleged was predicated on his charge of discrimination. Additionally, Dr. Kim did not negotiate Dr. Lee's salary, and had no authority to do so. Plaintiff has not shown that Dr. Kim harmed him otherwise. Though Dr. Kim may have given Dr. Lee generous treatment, Plaintiff has not put forth evidence that he gave Plaintiff unfavorable treatment because of his national origin or otherwise. Plaintiff merely alleges that his workload was too heavy, and that he disagrees with Dr. Kim's decision regarding Plaintiff's tenure. However, Plaintiff eventually became a tenured professor at MVSU. Plaintiff has failed to show that Dr. Kim caused him harm. Regardless, Plaintiff admits that when he reported his complaint to MVSU regarding the class overload, the problem was alleviated. Therefore, Plaintiff has not created a genuine issue of fact regarding MVSU's breach of duty.

## C. *Hostile Work Environment*

Incorporating the preceding arguments as a foundation, Plaintiff next claims that he was faced with a hostile work environment, as defined by Title VII. To establish a claim of hostile work environment under Title VII, a plaintiff must prove he

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted)). Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quotation marks and citations omitted). The Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation marks and citations omitted). To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (citation omitted).

Plaintiff has failed to bring forth evidence as to several elements of his claim. Plaintiff has not presented evidence of pervasive abuse based on race, or in this case—national origin, and Plaintiff has not shown that MVSU knew about such abuse but failed to take prompt remedial action. Plaintiffs must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548. Plaintiff's claim amounts to no more than conclusory allegations, which do not suffice to support his claim. *TIG Ins. Co.*, 276 F.3d at 759.

*D. Intentional and Negligent Infliction of Emotional Distress*

Under Mississippi law, a plaintiff may recover under a theory of intentional infliction of emotional distress "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . even though there has been no physical injury. In such instances, it is the nature of the act itself—as opposed to the seriousness of the consequences—which gives impetus to legal redress . . . " *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981), *overruled on other grounds by Adams v. U.S. Homecrafters, Inc.*, 744 So. 2d 736 (Miss. 1999). In other words, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Pegues v. Emerson Elec. Co.*, 913 F.Supp. 976, 982 (N.D. Miss. 1996) (quoting Restatement (Second ) of Torts § 46 cmt. d. (1965)).

Taking the allegations of Plaintiff's complaint as true, he has failed to allege such conduct. Plaintiff has not shown that hiring Dr. Lee, and paying him more than Plaintiff per year amounts to malicious, willful, wanton grossly careless or indifferent conduct. Furthermore, Plaintiff has not established that Defendant's conduct amounts to negligent infliction of emotional distress because he has not shown harm. *See McGuffie v. Herrington*, 966 So. 2d 1274, 1278 (Miss. Ct. App. 2007) (citing *Ill. Cent. R.R. Co. v. Hawkins*, 830 So. 2d 1162, 1174 (Miss. 2002) (citations omitted) ("If the conduct was not malicious, intentional or outrageous, there must be some sort of demonstrative harm")).

*Conclusion*

Plaintiff has failed to create a genuine issue of material fact as to his Title VII claims; his negligence claims, or his mental anguish claims. Therefore, his case must be dismissed. Defendant's Motion for Summary Judgment is GRANTED, and this case is CLOSED.

SO ORDERED this the 5th day of September, 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE